IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| NORCO WINDOWS, INC., a Wisconsin Corporation; and WEYERHAEUSER COMPANY, a Washington Corporation, | ) ) ) ) |
| | ) |
| Plaintiffs, | ) ) |
| v. | ) ) |
| THE HARTFORD FINANCIAL SERVICES GROUP, INC., a Delaware Corporation; HARTFORD FIRE INSURANCE COMPANY, a Delaware Corporation; HARTFORD CASUALTY INSURANCE COMPANY, an Indiana Corporation; TWIN CITY FIRE INSURANCE COMPANY, a Delaware Corporation; TRAVELERS INSURANCE GROUP HOLDINGS, INC., a Delaware Corporation; and AETNA CASUALTY & SURETY CO., a Connecticut Corporation, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) |
| Defendants. | ) ) |

Case No. CV-04-190-S-BLW

**MEMORANDUM DECISION AND ORDER**

## INTRODUCTION

The Court has before it a summary judgment motion (Docket No. 49), filed

by Defendants, Hartford Casualty Insurance Company and Twin City Fire

**Memorandum Decision and Order – 1**

Insurance Company.  The Court heard oral argument on May 16, 2005, and took

the motion under advisement.  For the reasons discussed below, the Court will

deny the motion for summary judgment.

The Court also has before it the following motions: Defendant's Motion to

Strike Certain Paragraphs of Plaintiffs' Complaint (Docket No. 47); Plaintiff's

Motion to Strike the Affidavit of Kenneth P. Smith in Support of Defendants'

Hartford Casualty Insurance Company and Twin City Fire Insurance Company's

Motion for Summary Judgment (Docket No. 57); Defendants' Motion to Stay

Discovery (Docket No. 48); and Plaintiffs' Motion to Compel Discovery (Docket

No. 55).   The Court has reviewed the record and considered the parties' briefings

and will also address those motions in this decision.

## BACKGROUND

On October 14, 1994, Norco Windows, Inc. ("Norco") became a general

partner in Windows Outlook, L.P. ("Outlook").  The purpose of the partnership

was to market and sell window and door products of the partnership and its

partners.  Norco left the partnership on December 9, 1995.

The partnership purchased several insurance policies from Hartford Casualty

Insurance Company, Twin City Fire Insurance Company (collectively "Hartford"),

Travelers Insurance Group ("Travelers") and others.  Norco also purchased its own

**Memorandum Decision and Order – 2**

insurance policies from Hartford when it left the partnership.  The following table shows the policies in dispute and the time period covered by each policy.  This summary judgment motion does not involve the Travelers' Policy.

| Insurance Carrier | Insured | Coverage Period | Policy Limit |
|---|---|---|---|
| **Hartford Policy A (Twin City)** Policy No. 91 UER MY3081 | Outlook, Norco, Oldach, Sealtite | June 30, 1995 - June 30, 1996 | Primary liability $1 million/ $2 million |
| **Hartford Policy B** Policy No. 91 UER MY3171 | Norco | December 10, 1995- December 10, 1996 cancelled July 2, 1996 | Primary liability $1 million/$2 million aggregate |
| **Hartford Policy C** Policy No. 91 UUN GS2357 | Norco | July 2, 1996 - July  2, 1997 | Primary liability $1 million/ $2 million |
| **Hartford Policy D** Policy No.  91 XHU GR7273 | Norco | July 2, 1996 - July   2, 1997 | Excess liability $5 million |
| **Travelers Policy A** Policy No. 020XS 24507368 | Outlook, Norco, Sealrite, Oldach | June 30, 1995- June 30, 1996 | Excess liability $25 million |

On September 13, 1999, a class-action claim was filed against Outlook and its partners, Oldach Window Corporation, Robert Oldach, Sealrite Window, Inc., and Norco.  *Rowe v. Oldach Window Corporation*, *et al.*  The Plaintiffs alleged, *inter alia*, that the Defendants negligently designed, manufactured, and sold windows that later failed, causing extensive property damage.  Hartford exercised its right to defend Norco.

**Memorandum Decision and Order – 3**

The class included individuals who had purchased and installed windows sold by Outlook between 1991 and 2000.  The parties stipulated to the creation of a Norco-subclass in January of 2004.  This stipulation recognized that Norco could be held liable only for the damage caused by windows that were sold while Norco was a partner in Outlook.

On September 25, 2002, the *Rowe* plaintiffs offered to settle with Norco for $3.5 million.  Norco forwarded the offer to Hartford but never received a response.  The case remained inactive for some time due to bankruptcy proceedings involving Oldach, but began to heat up again in 2003.

On November 7, 2003, Edward M. Allen, Norco's Colorado counsel, advised Hartford that Norco's liability as a partner of Outlook could reach or exceed $60 million.  Mr. Allen encouraged Hartford to make reasonable efforts to settle the claim.

The record does not indicate that Hartford took any immediate action to follow Mr. Allen's suggestion and attempt to settle the case on behalf of Norco.  However, all of the parties participated in mediation in December of 2003.  The mediation was unsuccessful.

A dispute developed between Hartford and Travelers regarding each company's liability to Norco.  Travelers argued that its excess liability policy

**Memorandum Decision and Order – 4**

would not be triggered until all of Norco's Hartford policies (Policies A-D) were exhausted. Hartford contended that the *Rowe* suit only involved Hartford Policy A.

On December 16, 2003, counsel for the *Rowe* plaintiffs reiterated his offer to settle with Norco for $3.5 million. Mr. Woodward, as counsel for Norco, forwarded the offer to Hartford and encouraged Hartford to accept it. Hartford never responded. On January 8, 2004, Norco wrote to Hartford inquiring about Hartford's position on the *Rowe* settlement offer. This letter went unanswered.

On February 2, 2004, class-action counsel wrote a letter notifying Norco that the offer to settle would only remain open until entry of the order certifying the class. Norco forwarded this letter to Hartford on February 3, 2004.

On February 4, 2004, Norco sent a letter to Hartford and Travelers expressing concern that the *Rowe* class would be certified in the near future, making settlement more difficult. Norco advised that it would accept the settlement offer unless the insurers were able to resolve their dispute regarding coverage or settle on Norco's behalf by the end of the day.

On February 4, 2004, Hartford's coverage attorney, Greg L. Perczak, sent a letter to all Outlook partners, confirming that a mediation for all parties was scheduled for February 23, 2004. He advised that Hartford would seek a global

**Memorandum Decision and Order – 5**

"stand still" and a guarantee from the *Rowe* plaintiffs that the Norco settlement offer would remain open until after the mediation.  He further requested that the partners not enter into individual settlements with plaintiff's counsel.

Norco responded to Hartford the same day, stating that it would delay accepting settlement until 12:00 p.m. on February 5, 2004.  The record does not reveal that either a global stand still or a guarantee regarding the settlement offer was achieved.  Norco settled the class-action lawsuit for $ 3.5 million on February 5, 2004.  On February 10, 2004, Norco demanded reimbursement from Hartford. This request went unanswered.

On February 23, 2004, Hartford entered meditation with the *Rowe* plaintiffs on behalf of the remaining insureds.  Norco was informed of the settlement negotiations but did not participate because its claims had already settled.  Hartford reached an agreement with the class-action representatives on February 26, 2004. All defendants were released from liability in exchange for a settlement payment of $5.65 million.  All of the proceeds from Policy A were exhausted in payment of this settlement.  At this time, Hartford and Travelers continue to deny Norco's requests for reimbursement for the February 5, 2004 settlement.

On April 14, 2004, Norco and its successor in interest, the Weyerhaeuser Company (collectively "Norco"), filed this lawsuit against Hartford, Travelers and

other insurers.  The Complaint (Docket No. 1) seeks reimbursement for $3.5 million and alleges the following causes of action: (1) breach of contract; (2) breach of the covenant of good faith and fair dealing; (3) breach of fiduciary duty; (4)intentional bad faith; and (5) negligence.  On March 31, 2005, Hartford filed its motion for summary judgment (Docket No. 49) on all claims pertaining to all Hartford policies in dispute, and the motion to strike a portion of the Complaint. On  April 11, 2005, Norco filed its motion to strike the Affidavit of Kenneth P. Smith in Support of Summary Judgment (Docket No. 57).

Since Norco filed the Complaint on April 14, 2004, very little discovery has been conducted.  There was a delay in discovery pursuant to a stipulated stay on all proceedings pending the settlement of the underlying class-action lawsuit (Docket Nos. 35 and 36)[1].  A final settlement in the underlying suit was reached on or about December 20, 2004, and the stay in this action was subsequently lifted.  On March 31, 2005, Defendants filed a motion to stay discovery pending the Court's ruling on Defendants' motion for summary judgment (Docket No. 48), and Defendants' motion to strike certain paragraphs of the Complaint (Docket Nos. 21 and 47). Neither party has produced any documents while the motion to stay discovery is

---

[1]The Court also granted a  motion  to extend the time for the Defendant's initial appearance  (Docket No. 19), and granted  Defendants' request for an extension of time to file its initial disclosures (Docket No. 41).

**Memorandum Decision and Order – 7**

pending.  However, Norco did file the original motion to compel discovery on April 11, 2005 (Docket No. 55).

## DEFENDANTS' MOTION TO STRIKE
## CERTAIN PARAGRAPHS OF THE COMPLAINT

Defendants' motion (Docket No. 47), requests that the Court strike paragraphs 33-53 and Exhibits J- V of the Complaint.  These paragraphs and exhibits pertain to the settlement offers made by the *Rowe* plaintiffs and to mediations held in December of 2003 and February of 2004.  The basis of this request is that Rules 403 and 408 of the Federal Rules of Evidence and Colorado's Dispute Resolution Act (CDRA), C.R.S.A. §13-22-301, bar admission of evidence pertaining to earlier settlement offers and mediation attempts.  Hartford asserts that such evidence may not be introduced for the purposes of establishing the "bad faith" conduct of an insurer.

Rule 408 only excludes evidence of compromise when it is offered to prove "the validity of a claim, the invalidity of a claim, or the amount of damages."  Fed. R. Evid. 408.  Such evidence may be admissible when it is offered for some other purpose, such as "proving bias or prejudice of a witness [or] negativing a contention of undue delay."  *Id.  See U.S. v. Technic Services, Inc.*, 314 F.2d 1031, 1045 (9th Cir. 2002)(settlement negotiations admissible to establish obstruction of criminal investigation); *Cohn v. Petsmart, Inc.*, 281 F.3d 837, 840 n.3 (9th Cir.

2002)(settlement negotiations admissible to establish parties's assessment of value of trademark).  Furthermore, courts have found that evidence of prior settlement negotiations may be admitted to show that an insurance company acted in bad faith.  *See Cal. Union Ins. Co. v. Liberty Mut. Ins. Co.,* 920 F. Supp. 908, 920  n.7 (N.D. Ill. 1996)(citation omitted);  *see also Athey v. Farmers Ins. Exch.*, 234 F.3d 357, 362 (8th Cir. 2000).

Norco offers the challenged paragraphs and exhibits as evidence of Hartford's bad faith and not for the purpose of establishing liability.  The Court finds that because Norco has not offered the evidence of earlier settlement and mediation efforts for the purpose of establishing liability, Rule 408 is inapplicable.

Similarly, the Court finds that Rule 403 of the Federal Rules of Evidence does not bar the admission of the challenged evidence.  Rule 403 provides that evidence may be barred if its probative value is substantially outweighed by "danger of unfair prejudice, confusion of the issues, or misleading the jury."  Fed. R. Evid. 403.  Evidence is unfairly prejudicial only if it has an undue tendency to suggest to the jury that it should make a decision on an improper basis.  *See Old Chief v. United States*, 519 U.S. 172, 180 (1997).

The Court finds nothing in the evidence that is unfairly prejudicial or so complicated that it will confuse or mislead the jury.  However, it does have

probative value on the issue of whether Hartford acted in bad faith.  Therefore, the
Court finds that Rule 403 does not bar the challenged evidence.

Additionally, Hartford has argued that the challenged language and exhibits
are inadmissable under the CDRA, because they relate to "mediation
communications."  The CDRA does provide that the parties to mediation "shall not
voluntarily disclose or through discovery or compulsory process be required to
disclose any information concerning any mediation communication."  C.R.S.A.
§13-22-307(2) (2005).  However, such information may be admitted if: (a) the
parties so agree; (b) the communication reveals the intent to commit a crime; (c)
the communication is public information; or (d) misconduct of the mediator is
alleged.  *Id*.  Hartford asserts that because the challenged portions of the Complaint
do not meet the criteria of any of the exclusions, the CDRA prohibits their
admission into evidence.

Whether the CDRA is controlling law on this issue is unclear.  Federal
courts struggle to categorize state dispute resolution statutes as either "procedural"
or "substantive" for *Erie* purposes.  *See e.g., Olam v. Congress Mortgage
Company*, 68 F. Supp. 2d 1110, 1126 (N.D. Cal. 1999)(the decision not to follow
state law was "unaccompanied by confidence").

Nonetheless, assuming that the CDRA does apply, the Court is still not

**Memorandum Decision and Order – 10**

persuaded that most of the evidence contained in the challenged paragraphs and

exhibits qualifies as "mediation communication" under the Act.  Mediation

communication is defined as:

> any oral or written communication prepared or expressed for the
> purposes of, in the course of, or pursuant to, any mediation services
> proceeding or dispute resolution program proceeding, including, but not
> limited to, any memoranda notes, records, or work product of a mediator,
> mediation organization, or party; except that a written agreement to enter
> into a mediation services proceeding or dispute resolution proceeding,
> or a final written agreement reached as a result of a mediation service
> proceeding or a dispute resolution proceeding, which has been fully
> executed, is not a mediation communication unless otherwise agreed
> upon by the parties.

Colo Rev. Stat. §13-22-302(2.5)(2005).  However, this definition does not cover

general settlement negotiations and discussions.  Because the Colorado legislature,

in 1991, amended the statute to distinguish between settlement negotiations and

formal mediation, the Colorado courts have concluded that the legislature meant to

give greater protection to mediation communications than the more general

protection afforded by Rule 408[2] to general settlement negotiations.  *See National

Union Fire Ins. Co. v. Price*, 78 P.3d 1138, 1141 (Colo. App. 2003).  Because of

this distinction, the Colorado Court of Appeals appears to have assumed that

mediation communications are inadmissible under the CDRA unless one of the

---

[2]The Colorado version of Rule 408 is substantially similar to Fed. R. Evid. 408.

**Memorandum Decision and Order – 11**

exceptions applies, while informal settlement negotiations and any related

communications are admissible under the CDRA, subject only to the provisions of

Rule 408.  *Id.*

The bulk of the challenged paragraphs and their corresponding exhibits

pertain to the settlement offer made by the *Rowe* Plaintiffs to Norco (¶¶ 33-35, 39-

50 and 52-53).  The record does not reflect that these settlement offers were made

in anticipation of or during a formal mediation session, and are therefore not

protected by the CDRA.

Part of paragraph 36 and paragraph 51contain general information about the

mediations, such as when they took place, which parties settled and the amount of

the settlement.  This information is included in the final settlement agreements and

is therefore not excluded by the CDRA.  See C.R.S.A. §13-22-302(2.5) (a written

mediation agreement is not a mediation communication unless otherwise agreed

upon by the parties).

However, part of paragraph 36, paragraphs 37 and 38 and Exhibits L, M and

N, provide information that is not included in the settlement agreement.

Specifically, paragraphs 36 and 37 discuss the dispute between Hartford and

Travelers regarding which insurer's coverage applied.  Paragraph 38 pertains to a

statement that Travelers' policies did not cover Norco after June 30, 1995.  The

**Memorandum Decision and Order – 12**

CDRA allows for the "admissibility of any evidence that is otherwise discoverable." C.R.S.A. §13-22-307(4). The underlying information provided in these paragraphs and exhibits would also be admissible through depositions and discovery, and are therefore admissible under the CDRA.

The only evidence that the Court finds inadmissable under the CDRA is Exhibit L, a letter from Norco's Colorado counsel to Hartford and other insurers. This letter details what transpired at the December mediation. As such it falls within the definition of "mediation communication" under C.R.S.A. §13-22-307(2), and will be excluded.

**NORCO'S  MOTION TO STRIKE
THE AFFIDAVIT OF KENNETH P. SMITH**

Affidavits in support of motion for summary judgment are required to "be made on personal knowledge, . . . set forth such facts as will be admissible in evidence, and . . . show affirmatively that the affiant is competent to testify to the matters therein." Fed. R. Civ. P. 56(e). When considering a motion for summary judgment, the Court may only consider evidence that would be admissible at trial. *Orr v. Bank of America,* 285 F.3d 764, 773 (9th Cir. 2002).

Norco moves to strike paragraphs 2, 3, 4, 5, 7, 9, 13, 14, and 15 from the Affidavit of Kenneth P. Smith in Support of Summary Judgment. In addition, Norco moves to strike Exhibits A and B, attached to the Affidavit. Norco claims

**Memorandum Decision and Order – 13**

that all of the above paragraphs should be stricken because Mr. Smith lacks

personal knowledge and the affidavit does not lay the proper the foundation for his

testimony.  In addition, Norco alleges that paragraphs 4, 9, and 14 should be

stricken because they are based on hearsay.  Norco also claims that paragraphs 9

and 14 state legal conclusions.

**A.    The Defects of Paragraphs 3, 5 and 15, and Exhibits A and B, Are Cured by the Supplemental Affidavit of Kenneth P. Smith**.

In response to the motion to strike, Hartford submitted the Supplemental

Affidavit of Kenneth P. Smith.  In the affidavit, Mr. Smith testifies that he was a

Liability Home Office Consultant assigned to supervise and oversee the underlying

class-action lawsuit.  Mr. Smith further testifies he has the requisite personal

knowledge due to his position.  Such a supplemental affidavit may be offered to

cure deficiencies in the averment section of the original affidavit.  *Liberty Curtin*

*Concerned Parents v. Keystone Central School District*, 81 FRD 590, 604 (M.D.

Pa. 1978).   Therefore, the Court finds that paragraphs 3, 5 and 15 are admissible.

An affidavit may be authenticated by the declarant's personal knowledge.

Fed. R. Evid. 901(b);  *See Orr,* 285 F.3d at  773-74.  Because the Court finds that

the supplemental affidavit of Kenneth P. Smith cures defects relative to personal

knowledge, the Court also finds that the exhibits are admissible.

**B.    Paragraphs 2, 7 and 13 Contain Statements Sufficient to Establish the**

**Memorandum Decision and Order – 14**

**Necessary Foundation to Establish Personal Knowledge.**

Norco claims that the statements found in paragraphs 2, 7 and 13 lack

foundation and do not support the finding that Mr. Smith has personal knowledge,

as required by Fed. R. Evid. 602.  Paragraph 2 states that Mr. Smith "understood

that the class would remain open until at least the class certification, which was

anticipated to occur after the February 23rd mediation."  Paragraph 7 states,

"Norco was kept fully informed and has been assured it would be fully protected

and released in the settlement of the class action lawsuit . . . ."  Paragraph 13 states,

" The Hartford made every effort to ensure that all of its policyholders globally

settled within the limited amount of policy limits available under the applicable

policies."  While the Affidavit does not include any specific evidence or

explanation of how Mr.  Smith came to know or believe these statements to be true,

it does indicate that Mr. Smith was the Liability Home Office Consultant assigned

to supervise and oversee the underlying class-action lawsuit.  It would seem to be a

rational inference that he acquired this knowledge as the person representing

Hartford in the litigation.  Therefore, the Court will deem these statements to be

adequately supported by a proper foundation.

**C.      Paragraph 4 Is Inadmissable Hearsay.**

Paragraph 4 recounts the content of a letter dated February 4, 2004, written

by Greg L. Percazk.  This paragraph is hearsay under Fed. R. Evid. 801, and does not meet any of the exceptions in Rule 803 or 804.  While the letter itself is admissible, this paragraph will not be considered by the Court.

**D.    Paragraphs 9 and 14 Are Inadmissable Because They Contain Legal Conclusions**.

Paragraphs 9 and 14 pertain to the settlement agreement between Hartford and the *Rowe* plaintiffs.  Paragraph 9 states that "The February 26, 2004 settlement of $5.65 million made by the Hartford *exhausted the policies issued to all class-action defendants for the relevant time periods*, including Policy A."  Emphasis supplied.  Paragraph 14 states, "The Hartford tendered to the class-action plaintiff's [sic] attorney, Scott Sullan, *the full aggregate policy limits for the applicable periods*."  Emphasis supplied.  These are disputed points of law in the current action.  Therefore, paragraphs 9 and 14 will be disregarded by the Court. *See American Civil Liberties Union of Nevada v. City of Las Vegas,* 13 F. Supp.2d 1064, 1071 (D. Nev. 1998).

## HARTFORD'S  MOTION FOR SUMMARY JUDGMENT

A motion for summary judgment must be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P.

**Memorandum Decision and Order – 16**

56(c).  The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

The burden then shifts to the non-moving party to make a specific showing of a "genuine issue of material fact for trial."  Fed.R.Civ.P. 56(e).  To meet this burden, the non-moving party "must provide evidence on which the jury could reasonably find for the [non-moving party]."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).  In deciding a motion for summary judgment, the evidence is viewed in the light most favorable to the non-moving party, and all justifiable inferences are to be drawn in its favor.  *Id.* at 255.

## A.   Disputed Issues of Fact Preclude Summary Judgment Regarding Hartford Policies B-D.

Whether coverage provided by Hartford Policies B-D extends to the Norco settlement must be determined by examining the claims made in the underlying lawsuit and the applicable insurance policy provisions.  *See Hoyle v. Utica Mut. Ins. Co.*, 48 P.3d 1256, 1262 (2002).  The burden is upon the insurer to show the limits of liability, and the burden is on the insured to establish that a loss is covered by the provisions of the insurance contract.  *Buckley v. Orem,* 730 P.2d 1037, 1042 (Idaho 1986).

The Defendants argue that the *Rowe* Complaint specifically restricts Norco's

liability to the time period from November 14, 1994 to December 9, 1995.  In

support of this argument, counsel for the Defendants has pointed to one sentence in

paragraph 20 of the underlying complaint that states "at all times material, Norco

was a general partner of Outlook and *assumed all the rights and liabilities of the*

*partnership and the other general partners*." (Emphasis added).  Counsel reads far

too much into this allegation in the complaint.  At most, the statement

acknowledges that Norco may be held liable for the damage caused by windows

sold while Norco was a partner of Outlook.  However, it does not limit Norco's

liability for the damage that such windows may cause at a later date.  In fact, the

above italicized language implies that liability would continue under general

partnership law.

Even if the Court looks beyond the language of the underlying complaint,

and considers the language in the stipulated Norco sub-class certification, it finds

no evidence in support of Defendant's position.  The language of the Policy B (and

presumably Policies C and D) does not limit the coverage to the time period that

the allegedly defective windows were *sold*.  Under Idaho law, when determining

whether an occurrence policy has been triggered, the key factor is whether the

property damage takes place during the policy period.  *Millers Mut. Fire Ins. Co. of*

*Texas v. Ed Baily, Inc.,* 647  1249, 1251-52 (Idaho 1982).   This echoes the

**Memorandum Decision and Order – 18**

language of the policy at issue here.  The Commercial General Liability Form,

attached to Hartford Policy B, states that the scope of coverage includes property

damage "that *occurs* during the policy period."  The Court therefore concludes

that, as a matter of law, Policies B-D provide coverage for any damages which

occurred during the policy period of the respective policies, regardless of when the

windows were sold.

At first blush, it appears that the foregoing legal conclusion might well

support a grant of summary judgment to Norco on the question of whether policies

B-D cover Norco's independent settlement with the plaintiffs in the *Rowe*

litigation.  *See Kassbaum v. Steppenwolf Productions, Inc.*, 236 F.3d 487, 494 (9th

Cir. 2000)(A court has the power sua sponte to grant summary judgment to a non-

movant even when there has been no cross-motion for summary judgment).

However, the issue is not that simple.  Even if policies B-D provided coverage for

property damage incurred during the policy period, Norco has the further burden of

establishing that its settlement with the plaintiffs in the *Rowe* litigation related to

claims for damages which occurred during the policy periods.   *See Buckley v.*

*Orem,* 730 P.2d at 1042.  The record is not sufficiently developed to allow the

Court to make this determination.  Accordingly, the Court will resist the temptation

to grant Norco summary judgment on the question of coverage under polices B-D,

**Memorandum Decision and Order – 19**

but will deny Hartford's motion for summary judgment as it relates to the same question.

**B.    Disputed Issues of Fact Preclude Summary Judgment Regarding All Hartford Policies.**

Hartford asserts that it met its contractual and fiduciaries duties to Norco because: (1) the February 26, 2004, settlement with the class-action plaintiffs exhausted Policy A; and (2) Norco settled with the plaintiffs independently.  There are several problems with these contentions.  First, they assume that Policies B-D provided no coverage for these claims.  As indicated above, that assumption is faulty.  Second, they assume that no reasonable finder of fact could conclude that Norco's decision to protect its interests by entering into an early settlement of the class action without Hartford's approval was reasonable.  As discussed below, that assumption is also faulty.

Idaho courts recognize that the insured-insurer relationship is uniquely "characterized by public interest, adhesion and fiduciary responsibilities."  *White v. Unigard Mut. Ins. Co.,* 730 P.2d 1014, 1019 (Idaho 1986) (quoting *Seaman's Direct Buying Serv. v. Standard Oil*, 686 P.2d 1158, 1166 (Cal. 1984)).  While insurance companies are not fiduciaries in "the strict meaning of the term," they have the duty of good faith and fair dealing when exercising their right to defend or settle a third-party claim.  *Id.*

**Memorandum Decision and Order – 20**

In addition, Idaho courts recognize that a breach of fiduciary duty may give rise to a separate tort action.  *Id.* at 96, 730 P.2d at 1016.   The duty of good faith and fair dealing "encompasses more than the duty to defend, settle, and pay."  *Id.* It is a duty "imposed by law on an insurer to act fairly and in good faith in discharging its contractual responsibilities."  *Id.*

When a third-party settlement is rejected by the insured, the proper method for determining whether an insurer acted in bad faith is the "equality of considerations" test.  *Trucks Ins. Exchange v. Bishara,* 916 P.2d 1275, 1280 (Idaho 1996).  Under the "equality of considerations" test the trier of fact is to weigh several factors.  *Id.*  "[F]irst and foremost consideration must be whether the insurer failed to communicate with its insured."  *Id.* at 1280.  "Second the amount of financial risk to which each of the parties will be exposed in the event an offer is refused must likewise be an important consideration."  *Id.*  The remaining factors that should be given some weight are:

> The strength of the injured claimant's case on the issues of liability and damages; whether the insurer has thoroughly investigated the claim; the failure of the insurer to follow the legal advice of it's own attorneys; any misrepresentations by the insured which have mislead the insurer in its settlement negotiations; and any other factors which may weigh toward establishing or negating the bad faith of the insurer.

*Id.*

At a minimum, an insured must  "make a diligent effort to ascertain the

facts, communicate the results of such investigation to the insured and must inform him of any settlement offers that may affect him, so that the insured may take proper steps to protect his own interests." *Bishara,* 916 P.2d at 1280 (quoting *Ivy v. Pacific Auto. Ins. Co*., 156 Cal. App. 2d 652, 320 P.2d 140, 146 (1958)).

It is clear that Norco was fully informed of all settlement offers.  However, it is not absolutely clear that Hartford communicated with Norco in a manner that would allow Norco to take the proper steps to protect itself.  Norco has provided copies of several letters to Hartford addressing Norco's liability and urging settlement.  Norco alleges that except for the November 4, 2004, "stand still" letter, Norco's attempts to communicate with Hartford were ignored.  Norco also points to the dispute between Hartford and Travelers as evidence that Hartford made no assurance to fully protect Norco.  Viewing the facts in the light most favorable to Norco, as the non-moving party, a reasonable juror could certainly find that Hartford failed to properly communicate with its insured.

Likewise, under the second factor of "equality of considerations" test, a reasonable juror could conclude that Norco would have been exposed to a far greater financial risk than Hartford in the event the offer was refused.  This is particularly true if the trier of fact determines that Policies B-D (with their combined coverage of $9 million) were available.

**Memorandum Decision and Order – 22**

These same facts arguably establish a pattern of behavior that will be critical in evaluating all of Norco's legal claims against Hartford.  The evidence is sufficient to raise material questions of fact regarding all of Norco's claims against Hartford.  Therefore, summary judgment with respect to these claims is denied.

## HARTFORD'S MOTION TO STAY DISCOVERY

Hartford's motion to stay discovery is moot.  Hartford believed that the Court's ruling on the motion to strike certain paragraphs of the Complaint, and on the motion for summary judgment would dispose of the need to conduct most or all discovery.  The Court has denied summary judgment, and has denied the motion to strike portions of the Complaint.  Therefore, it is unnecessary to rule on the motion to stay discovery.

## NORCO'S MOTION TO COMPEL

Norco's motion to compel discovery is filed under Rule 37(a)(1). Additionally, Norco requests attorneys' fees under Rule 37(a)(4)(A).  Rule 37(a) is intended to curb discovery abuse and prevent the waste of judicial time where there is no genuine dispute.  *See* 1970 Advisory Committee Notes to Fed. R. Civ. P. 37(a)(4).

In its motion to compel, Norco asserts that Hartford refused to provide any documents that were either identified in its initial disclosure or requested pursuant

to Rule 34.  Hartford's response brief does not dispute this assertion.  Instead, it affirmatively states that Hartford has not produced any documents "pending the Court's ruling on the motion to stay."  Hartford additionally argues that the Court should deny the motion because Norco failed to: (1) show that the parties met and conferred as required by Local Rule 37.1; and (2) specifically identify the materials that Norco is entitled to receive.  The Court is unpersuaded by these arguments. First, the Court finds that Norco's assertion that the parties did meet and confer satisfies Local Rule 37.1.  Second, as further discussed below, Hartford had sufficient information to identify and produce at least *some* of the requested materials that are non-privileged and responsive.

As the Court stated in the hearing on May 16, 2005, all parties have a duty to engage in discovery unless otherwise relieved by the Court.  Hartford has not been so relieved, and should have provided non-privileged materials that were identified in its initial disclosure or that were otherwise responsive and non-privileged.  For example, Hartford clearly should have produced copies of Policies C and D prior to the summary judgment hearing.  Hartford failed to do so.

Hartford's discovery failures violate Rule 26 and thereby trigger the sanction provision of Rule 37.  Under Rule 37(a)(4), the Court can find no "substantial justification" for Hartford's discovery failures, and can find no "other

**Memorandum Decision and Order – 24**

circumstances" that would make an award "unjust."  The Court will therefore award Norco the fees and costs it incurred in moving to compel Hartford's discovery response.  Norco's counsel shall file a petition setting forth these expenses and costs within ten days from the date of this decision.

Hartford should immediately produce all non-privileged responsive documents identified in the initial disclosure.  This does not include: (1) the documents, files, and notes of Steve Main, who acted as the mediator in the underlying class-action lawsuit; or (2) the documents and personal notes of the parties' representatives taken in preparation for or during a formal mediation session.  However, Hartford is not excused from producing files, notes or documents that pertain to the settlement offer made to Norco by the *Rowe* class, which do not fall within the definition of "mediation communication," as defined in the CDRA.  Likewise, Hartford should immediately produce documents requested in Norco's discovery request, in accordance with this Order and Rules 26 and 34.

In the event that the parties are unable to resolve future discovery disputes, the Court reminds both parties that the rules of discovery are to be strictly observed.  The Court further advises that subsequent motions to compel will almost certainly result in an award of attorneys' fees to the prevailing party.

**Memorandum Decision and Order – 25**

# ORDER

In accordance with the Memorandum and Decision set forth above, it is hereby ordered that Defendants' motion to strike certain paragraphs and exhibits of Plaintiffs' Complaint (Docket No. 47) is GRANTED in part and DENIED in Part. The motion is granted with respect to Exhibit L, and denied with respect to all other paragraphs and other exhibits.

IT IS FURTHER ORDERED that Plaintiffs' Motion to Strike the Affidavit of Kenneth P. Smith ( Docket No. 57) is GRANTED in Part and DENIED in part. Paragraphs 4, 9 and 14, are hereby stricken from the Affidavit.  Th Court denies the motion with respect to paragraphs 2, 3, 5, 7, 13 and 15, and Exhibits A and B.

IT IS FURTHER ORDERED that Defendants' motion for summary judgment (Docket No. 49) is DENIED.

IT IS FURTHER ORDERED that Defendants' motion to stay discovery (Docket No. 48) is deemed MOOT.

IT IS FURTHER ORDERED that Plaintiffs' motion to compel (Docket No. 55) is GRANTED.  Defendants are ordered to produce all responsive non-privileged documents in accordance with this Order.

IT IS FURTHER ORDERED that Plaintiffs' request for an award of reasonable attorneys' fees, incurred in moving to compel Defendants' discovery

response (Docket No. 55), is GRANTED.   Plaintiffs' counsel is ordered to file a

petition detailing the fees and costs it incurred, in filing the motion and the

supporting documents, within ten days from the date of this decision.


DATED:  **June 6, 2005**

B. LYNN WINMILL
Chief Judge
United States District Court